**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Susan Kosakowski, | : | Case No. 3:07CV2446 |
| Plaintiff, | : | |
| v. | : | **MAGISTRATE'S REPORT AND RECOMMENDATION** |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of Defendant's final determination denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U. S. C. §§ 416 (i) and 423 and for Supplemental Security Income (SSI) under Title XVI of the Act, 42 U. S. C. § 1381 *et seq*. Pending are the parties' briefs on the merits and Plaintiff's Reply (Docket Nos. 17, 19 & 22). For the following reasons, the Magistrate recommends that the decision of the Commissioner be affirmed.

## PROCEDURAL BACKGROUND

On September 7 and September 11, 2002, Plaintiff filed applications for DIB and SSI[1] alleging that she was disabled with an onset date of February 1, 2001 (Tr. 54-56). These applications were denied

---

[1] The application for SSI filed on September 11, 2002 was not available for inclusion in the file (Tr. 3).

initially and on reconsideration (Tr. 50-53, 44-46).  At the administrative hearing conducted on February 9, 2005, by Administrative Law Judge (ALJ) Fred McGrath, Plaintiff represented by counsel, and Vocational Expert (VE) Joseph Thompson appeared and testified (Tr. 272).  On October 31, 2005, the ALJ rendered an unfavorable decision denying Plaintiff payments under DIB and SSI (Tr. 13-23).  The Appeals Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner on June 14, 2007 (Tr. 5-7).  Plaintiff filed a timely action in this Court seeking judicial review of the Commissioner's unfavorable decision.

## JURISDICTION

This Court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).  *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832 -833 (6th Cir. 2006).

## FACTUAL BACKGROUND

Plaintiff claimed that she had been unable to work since February 1, 2001.  She suffered from dyspnea, insomnia and a thyroid malfunction, psoriasis and cephalgia.  She could not work if she did not sleep.  She was absent from work because she was unable to cope or perform the job properly (Tr. 277, 278, 283).

In addition to her other impairments, Plaintiff knees would swell and occasionally "lock up."  Once she was in bed for three days (Tr. 278, 279).  Plaintiff described the psoriasis on her knees as "severe, severe."  The psoriasis was painful and caused her knees to crack, bleed and flake ( Tr. 278, 288).  Plaintiff ambulated with a cane or walker (Tr. 279).

To relieve her pain, Plaintiff elevated her legs, reclined and put pillows under her legs.  On an average day, Plaintiff sat in a recliner or rested in bed approximately six hours at a time (Tr. 280).

2

Plaintiff had back pain, cramps and numbness in her thighs and tremors in her legs if she stood more than ten minutes (Tr. 281, 282). She estimated that she could walk approximately thirty-five feet using a cane and twenty feet if she did not use a cane. She also claimed that she had difficulty bending (Tr. 281). Plaintiff had to shift positions while seated to accommodate the pain from psoriasis (Tr. 282). She could lift eight pounds. Noises exacerbated her headaches (Tr. 283). Plaintiff was able to sleep more effectively in a recliner than in a bed. Although she was able to sleep most of the afternoon and early evening, she was unable to fall asleep at night (Tr. 284). Consequently, she had no energy (Tr. 285).

Plaintiff claimed that her concentration was limited and her ability to comprehend was also affected by her impairment (Tr. 285). Since 2001, Plaintiff had been taking medication to treat symptoms associated with suicidal thoughts, frustration and stress (Tr. 286, 287).

The VE testified that his recommendations were consistent with the jobs described in the *Dictionary of Occupational Titles* (*DOT*) and its companion, *Selected Characteristics of Occupations* (*SCO*). Plaintiff would be unable to perform her prior jobs of care giver and bill collector if she were subject to the following limitations: 1) light work that prohibited frequent operation of foot controls, climbing stairs, ropes or scaffolds, 2) avoiding all exposure to odors, dust, gases and poor ventilation and 3) avoiding high stress jobs that required her to exercise more than the occasional judgment. The cashier position would be considered applicable (Tr. 289, 291). It would take approximately one month to learn the duties and acquire the skills needed to perform these jobs (Tr. 291).

Other unskilled, light duty work that would be applicable included a mail clerk, food preparer, ticket taker, fast food worker and laundry folder (Tr. 290). The applicable sedentary unskilled positions included an order clerk for food and beverage, telephone quotation clerk and charge clerk. There were 750, 250 and 500, respectively, such jobs in the Toledo metropolitan area (Tr. 291). There were

3

approximately 1,500 light duty cashier positions that would allow a sit/stand option (Tr. 293).

The VE further testified that absenteeism of anything more than one to two days per month would be considered unacceptable. Absenteeism above and beyond that level on a regular basis would eliminate the jobs described above (Tr. 292). If the hypothetical plaintiff were required to use a cane, the cashier position would be eliminated. An accommodation would have to be made for the ability to write with one hand if she were required to use a cane (Tr. 294). Anything longer than a short-term temporary elevation of the lower extremities would preclude employment and be unreasonable as far as an accommodation (Tr. 295).

## **MEDICAL EVIDENCE**

**2001**

Dr. Darice L. Zabak found that Plaintiff suffered from severe depression on April 3. She was unable to tolerate stress, had memory problems and no interests (Tr. 226, 227).

**2002**

Dr. Zabak treated Plaintiff for an infected lip laceration (Tr. 231). In May, Dr. Zabak treated her for leg edema, allergic rhinitis and psoriasis (Tr. 230, 233). Dr. Zabak diagnosed Plaintiff with lumbar strain, morbid obesity, depression and arthritis on July 25 (Tr. 229).

Dr. Jerome Zake, Ph.D., conducted a disability assessment on October 22 and made the following conclusions: (1) Plaintiff's ability to relate to others was somewhat impaired; (2) Plaintiff appeared to be capable of maintaining her attention to simple, repetitive tasks; (3) Plaintiff's ability to withstand the stress and pressures associated with day to day work activities was very poor; and (4) Plaintiff appeared capable of managing her own funds. Dr. Zake diagnosed Plaintiff with major depressive disorder, panic disorder and morbid obesity. He rated Plaintiff's social, occupational and psychological functioning as

indicative of some impairment in reality testing or communication. He found that Plaintiff had a major impairment in several areas, such as school, work, family, relations, judgment, thinking or mood (Tr. 130, 131).

In November, Dr. G. T. Matanguihan conducted a "general survey" and determined that there were no abnormalities to Plaintiff's appearance, behavior, speech, mood, orientation and intellectual functioning. Her physical systems were normal. He opined that Plaintiff had obesity hyperventilation syndrome (Tr.134). Plaintiff's range of motion in the cervical spine, shoulders, elbows, wrists, hands/fingers and ankles was normal. Plaintiff's had decreased range of motion in her hips and knees (139-140). Also in November, Dr. Dean R. Ball conducted a radiological consultation and found evidence of mild fibrosis in the lower lung field and marked degenerative changes in the left knee. Further study was recommended of the chest (Tr. 136).

On December 19, Dr. Robert Kose found mild obstructive airways disease and a mild decrease in lung volumes (Tr. 143). Plaintiff's vital capacity measured by exhaling as rapidly as possible was 66%. There was mild slowing of expiratory flows (Tr. 154).

Dr. Catherine A. Flynn, Psy. D., opined on December 30 that Plaintiff suffered from a disturbance of mood characterized by decreased energy and thoughts of suicide. She diagnosed Plaintiff with a depressive disorder (Tr. 166). Plaintiff had mild limitations in her activities of daily living and maintaining social functioning. She had moderate limitations in her ability to maintain concentration, persistence and pace, perform activities within a schedule, complete a normal workweek and accept instructions and respond appropriately (Tr. 173, 177, 178). There was no significant limitation in Plaintiff's ability to interact appropriately (Tr. 178).

**2003**

X-rays from two views of the right knee joint were suggestive of severe degenerative osteoarthitic changes (Tr. 217). On November 21, the computed tomography (CT) scan of Plaintiff's abdomen and pelvis showed borderline cardiac enlargement, small right hepatic cyst and possible small left ovarian cyst (Tr. 190). There was no evidence of acute bone or joint space abnormalities but there was narrowing of the 4-5 and lumbosacral disc spaces (Tr. 191). Plaintiff was treated for back pain on November 22. Frontal and lateral views of Plaintiff's chest showed cardiomegaly with mild aortic dilation (Tr. 189). Plaintiff was diagnosed on November 25 with lumbago, psoriasis, essential hypertension, depressive disorder, cardiomegaly, liver disorder, morbid obesity, tobacco use disorder, family history of malignant neoplasm of gastrointestinal tract and joint pain in joint of lower leg (Tr. 182).

On September 2, Dr. Zabak opined that Plaintiff could stand/walk for fifteen minutes in an eight-hour workday and sit for four hours in an eight-hour workday but she could not bend or engage in repetitive foot movements (Tr. 220). During December, she thought that the Plaintiff's ability to stand/walk, sit and lift/carry were all affected by her impairment. However, on the date that the examination was conducted, Plaintiff was in extreme pain, unable to sit and had to lie down during the examination (Tr. 213).

Dr. Zabak interpreted the results of a magnetic resonance imaging (MRI) of Plaintiff's spine, finding evidence of degenerative changes at L4-L5 and L5-S1, disc bulge at L5-S1, mild degree of spinal stenosis at L5-S1 and disc desiccation at L4-L5 and L5-S1 (Tr. 211). Dr. Zabak described Plaintiff's overall health as poor but stable (Tr. 212).

Dr. Ellin Cusack Frair conducted a physical residual functional capacity assessment finding that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk at least two hours in an eight-hour workday, sit about six hours in an eight-hour workday

6

and occasionally push and pull using the lower extremities (Tr. 158). Plaintiff should never balance and she should avoid even moderate exposure to fumes, odors, dust and gases. Plaintiff had no manipulative, visual or communicative limitations (Tr. 159, 160).

**2004**

Plaintiff was treated for pain in her left knee on November 11 (Tr. 263). Dr. Thomas P. Jones noted that there was evidence of advanced degenerative arthritis bilaterally on November 17 (Tr. 256). Dr. Krishna Mallik confirmed the diagnosis of severe bilateral degenerative joint disease on November 30 (Tr. 240-241). In December, Dr. Mallik diagnosed Plaintiff with severe osteoarthritis bilaterally with almost complete loss of joint space (Tr. 255).

**2005**

Dr. Joseph Peyton opined that Plaintiff could lift up to ten pounds occasionally, stand for two hours in an eight-hour workday, sit for two hours in an eight-hour workday and sit for up to thirty minutes without interruption (Tr. 244). Plaintiff could never climb, crouch, kneel or crawl (Tr. 245). Plaintiff had only a fair ability to deal with work stress, maintain attention/concentration, carry out complex job instructions and carry out detailed but not complex instructions (Tr. 248, 249).

Plaintiff was prescribed an anti-inflammatory medication to treat the symptoms of psoriasis in August and September (Tr. 270, 271).

## **STANDARD OF DISABILITY**[2]

To establish entitlement to disability benefits, a claimant must prove that she or he is incapable of performing substantial gainful activity due to a medically determinable physical or mental impairment

---

[2] The standard for disability under both the DIB and SSI programs is substantially similar. *See* 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920 (1999). To assist clarity, the remainder of this Report and Recommendation references only the DIB regulations, except where otherwise necessary.

7

that can be expected to result in death or to last for at least twelve months. *Murphy v. Secretary of Health and Human Services*, 801 F.2d 182, 183 (6th Cir. 1986) (*citing* 42 U. S. C. § 423(d)(1)(A)). The claimant must show that his/her impairment results from anatomical, physiological or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1513, 404.1528, 416.913, 416.928 (Thomson/ West 2008).

To determine disability, the ALJ uses a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 (a) - (f) and 416.920 (a) - (f) (Thomson/West 2008). The ALJ considers: (1) whether claimant is working and whether that work constitutes substantial gainful activity, (2) whether claimant has a severe impairment, (3) whether claimant has an impairment which meets or equals the durational requirements listed in Appendix 1 of Subpart P, Regulations No. 4, (4) whether claimant can perform past relevant work, and (5) if claimant cannot perform his/her past relevant work, then his/her RFC, age, education and past work experience are considered to determine whether other jobs exist in significant numbers that accommodate him/her. 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920 (a)-(f) (Thomson/West 2008).

A finding of disability requires an affirmative finding at step three or a negative finding at step five. The claimant bears the burden of proof at steps one through four, after which the burden shifts to the Commissioner at step five. The ALJ's analysis at step five typically involves an evaluation of the claimant's RFC to perform a particular category of work (i.e. sedentary, light, medium, heavy or very heavy work), in combination with an application of the Grid to determine whether an individual of the claimant's age, education and work experience could engage in substantial gainful activity. *See* 20 C.F.R. Pt. 404, Subpart P, App. 2 (Thomson/West 2008).

## **THE ALJ'S FINDINGS**

The ALJ made the following findings:

1.  Plaintiff met the non-disability requirements for a period of disability and DIB set forth in Section 216(i) of the Act and was insured for benefits through October 31, 2005. Plaintiff had not engaged in substantial activity since her alleged onset date.

2.  Plaintiff contends with severe impairments including psoriatic arthritis, bilateral arthritis of the knees, degenerative disc disease and disc desiccation with associated disc bulge and a mild degree of spinal stenosis, chronic obstructive and restrictive pulmonary disease exacerbated by morbid obesity, depression with alcohol abuse and allergic rhinitis. These medically determinable impairments do not meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

3.  Plaintiff's testimony concerning her limitations was not totally credible.

4.  Plaintiff retained the residual functional capacity to perform a range of light work reduced by the following: (1) no frequent operation of foot controls, (2) no climbing ladders, ropes or scaffolds, (3) occasional climbing of stairs and ramps, (4) occasional stooping, (5) avoid all exposure to unprotected heights, (6) avoid even moderate exposure to fumes, odors, dust, gases, and poor ventilation; (7) low stress work and (8) limited social contact with co-workers, supervisors and the general public to the extent the contact involves only occasional conversations and interpersonal interaction.

5.  Plaintiff's past relevant work as cashier did not require the performance of work-related activities precluded by her residual functional capacity.

6.  Plaintiff's impairments did not prevent her from performing her past relevant work.

7.  Plaintiff was capable of performing a significant number of other jobs in the regional economy at the light and sedentary levels, specifically, mail clerk, food preparation, ticket taker, fast food worker, food and beverage order clerk, telephone clerk and charge account clerk jobs.

8.  Based on the finding that Plaintiff could do her past relevant work and a significant number of other jobs in the regional economy and applying the framework of the medical vocational guidelines, Plaintiff was not under a disability as defined under Act at any time through the date of the decision.

(Tr. 21, 22).

## STANDARD OF REVIEW

Pursuant to 42 U. S. C. § 405(g), this Court has jurisdiction to review the Commissioner's decisions. *Cutlip v. Secretary of Health and Human Services*, 25 F. 3d 284, 286 (1994). Judicial review of the Commissioner's decisions is limited to determining whether such decision is supported by substantial evidence and whether the Commissioner employed the proper legal standards. *Id.* (*citing Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* (*citing Kirk v. Secretary of Health & Human Services*, 667 F.2d 524, 535 (6th Cir. 1981) *cert. denied,* 103 S. Ct. 2428 (1983)). The reviewing court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Id.* (*citing Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir.1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole. *Id.* (*citing Kirk,* 667 F.2d at 536). If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *See Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir.1983), and even if substantial evidence also supports the opposite conclusion, *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

## DISCUSSION

Plaintiff argues that the ALJ failed to: (1) attribute controlling weight to opinions of Plaintiff's treating physicians, (2) find that she can perform her past relevant work, (3) find that psoriasis was a severe impairment and (4) consider the effects of her massive obesity. Defendant responded that the

ALJ properly considered Plaintiff's impairments, that the ALJ was not required to designate her psoriasis as severe, that substantial evidence supports the step five finding and that the ALJ properly considered claimant's impairments in combination with each other.

1.  The ALJ failed to give controlling weight to Dr. Peyton's opinions of residual functional capacity.

Plaintiff claims her medical reports from Dr. Peyton deserve treating source review because they are consistent with the opinions provided by Dr. Zabak. It is Plaintiff's contention that the ALJ erred by classifying Dr. Peyton as a medical source and failing to attribute controlling weight to his opinion. The ALJ violated *Wilson* by failing to articulate a good cause for the failure to attribute controlling weight to Dr. Peyton's opinion.

Classifying a medical source requires an interpretation of the definitions in 20 C. F. R. § 404.1502. *Smith v. Commissioner of Social Security,* 482 F. 3d 873, 876 (6th Cir. 2007) (*citing McClanahan v. Commissioner of Social Security*, 474 F.3d 830, 833 (6th Cir. 2006) (*citing Smith-Wilkins v. Secretary of Health and Human Services,* 880 F.2d 864, 866 (6th Cir. 1989)). Any fact found by the ALJ bearing on this question must be accepted by this court if it is supported by substantial evidence. *Id.* (*citing* 42 U.S.C. § 405(g); *see also McClanahan,* 474 F.3d at 833). The court must defer to the Commissioner's factual finding that is supported by substantial evidence, even if an opposite conclusion can be reached. *Id.* (*citing Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007)).

A physician qualifies as a treating source if the claimant sees her or him "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." *Id.* (*citing* 20 C.F.R. § 404.1502). A physician seen infrequently can be a treating source "if the nature and frequency of the treatment or evaluation is typical for [the] condition." *Id.*

Even if consistent with other reports in the record, Dr. Peyton does not qualify as a treating

source. He ordered a chemical analysis on July 6, 2004 (Tr. 236), ordered x-rays in November 2004 (Tr. 256), completed medical assessment forms on January 14, 2005 (Tr. 244-245, 248-249) and requested a permanent handicapped parking permit on January 14, 2005 (Tr. 246-247). There is no evidence that Dr. Peyton completed a medical examination or administered any treatment or evaluation. Dr. Peyton's limited contact with Plaintiff fails to satisfy the type of ongoing treatment relationship contemplated by the plain text of the regulation. In the absence of treating source status for Dr. Peyton, the Magistrate does not reach the question of whether the ALJ violated *Wilson* by failing to give reasons for not accepting his report. Plaintiff's first assignment of error lacks merit.

2.      The ALJ failed to sustain the burden at step four of the sequential evaluation.

Plaintiff's claim that the ALJ failed to sustain the burden at step four of the sequential evaluation is predicated on two ancillary issues. First, she is unable to return to her past relevant work as a cashier. Second, the ALJ's residual functional capacity decision is not supported by substantial evidence.

Plaintiff contends that she was employed as a cashier in 1980's. Employment dating back to 1980 is not consistent with the definition of "past relevant work."

The Magistrate finds that Plaintiff is correct. The Commissioner failed to sustain the burden of proof at step four of the sequential evaluation.

The definition of "past relevant work" is work that the claimant has done within the past fifteen years that was substantial gainful activity and that lasted long enough for the claimant to learn to do it. 20 C. F. R. § 404.1560(b)(1) (Thomson/West 2008). Substantial gainful activity is work activity that is both substantial and gainful. 20 C. F. R. § 404.1572 (Thomson/West 2008). Substantial work activity is work activity that involves both significant physical or mental activities, even if done on a part-time basis. 20 C. F. R. § 404.1572(a) (Thomson/West 2008). Gainful work activity is work that the claimant

12

does for pay or profit.  20 C. F. R.  § 404.1572 (b) (Thomson/West 2008).

According to the work history report provided by Plaintiff, she was last employed as a cashier in 1985 (Tr. 95).  The stint of employment as a cashier was more than fifteen years ago.  Thus, Plaintiff could not return to her past relevant work as a cashier.  The ALJ failed to properly analyze step four of the sequential evaluation.

In the event that the ALJ erred at step four of the sequential evaluation, he proceeded to step five and obtained vocational information from a VE.  The ALJ found at step five of the sequential evaluation that Plaintiff could perform other work in the national economy.  Plaintiff does not contend that she could not perform the jobs offered by the ALJ as an accommodation in step five of the sequential evaluation.  Instead, Plaintiff challenges the ALJ's residual functional capacity finding used at steps four and five of the sequential evaluation.  Specifically, Plaintiff argues that not one physician that certifies that she can walk or stand up to six hours per day.

The "residual functional capacity assessment" is a term of art in Sections 404.1545 and 416.945 and 404.1546 and 416.946 intended to describe the ultimate finding about a person's ability to do work-related activities.  STANDARDS FOR CONSULTATIVE EXAMINATIONS, HALLEX II-4-1-2, 1996 WL 1586732 (October 31, 1996).  Residual functional capacity is simply meant to describe the claimant's residual abilities or what a claimant can do.  *Howard v. Commissioner*, 276 F. 3d 235, 240 (6th Cir. 2002).  The ALJ's assessment of residual functional capacity is driven by consideration of all the relevant medical and other evidence.  20 C. F. R. § 416.945(a)(3) (Thomson/West 2008).  It is a determination made by an adjudicator based upon his or her review of the entire case record including but not limited to observations of lay witnesses of a claimant's apparent symptomatology, a claimant's own statement of what he or she is able or unable to do, and many other factors that could help an adjudicator determine

13

the most reasonable findings in light of all of the evidence. *Id.* Thus, a medical source's statement about what an individual can still do is opinion evidence that an adjudicator considers together with all of the other evidence when assessing a claimant's residual functional capacity. *Id.*

Even if there is no medical evidence that Plaintiff can stand up to six hours per day, such capacity is not relevant to the determination of a claimant's ability to engage in light work. Light work is not defined solely on the basis of a claimant's ability to stand. It may involve a good deal of sitting with some pushing and pulling of arm or leg controls. 20 C. F. R. §§ 404.1567(b) and 416.967(b) (Thomson/West 2008). The ALJ's inability to relate Plaintiff's alleged inability to stand for up to six hours to a physician does not make the residual functional capacity finding inaccurate.

The ALJ defined residual functional capacity (Tr. 18, ¶ 3), considered Plaintiff's description of her symptomology and what she was unable to do (Tr. 18, ¶s 5, 6; Tr. 19, ¶ 1, Tr. 20, ¶s 1, 2 & 3) and reviewed the relevant medical evidence and treatment history (Tr. 19, ¶s 3, 4, 5, & 6; Tr. 20, ¶1 & 3). He fully articulated his reasons for discounting Plaintiff's testimony and accurately set forth his rationale for finding that Plaintiff had the physical exertional requirements to perform light work. Since the ALJ employed the proper legal standard in assessing residual functional capacity and the conclusion made as a result of that assessment is supported by substantial evidence, the Magistrate recommends affirming the ALJ's residual functional capacity finding for light work.

Plaintiff request's for remand is predicated on the assumption that she cannot perform any light jobs. The sedentary jobs identified by the VE do not represent a significant number of jobs in the national economy.

The Magistrate does not address the merits of this claim since the jobs identified by the VE also included light jobs. Plaintiff does not argue that the light jobs identified by the VE do not exist in

significant numbers.

3.    Plaintiff claims that her psoriasis was a severe impairment.

Plaintiff suggests that the psoriasis is recognized as a disabling skin disease. While her lesions may not have reached the level described in 8.05 of the Listing, 20 C. F. R. Pt. 404, Subpt. P, App.1, she has a severe manifestation of the illness. Plaintiff contends that the ALJ failed to acknowledge the severity of her impairment.

The ALJ considered that Plaintiff had a significant manifestation of psoriasis from which arthritis developed (Tr. 21). The manifestation of psoriasis was not of the severity to be disabling. Under Section 8.05 of the Listing, psoriasis manifested by extensive fungating or extensive ulcerating skin lesions that persist for at least three months despite treatment can be disabling. 20 C. F. R. Pt. 404, Subpt. P, App. 1, 8.05 (Thomson/West 2008). Severity is based on the extent of skin lesions, the frequency of flare-ups of skin lesions, how the symptoms limit the claimant, the extent of treatment and the effects of the treatment. 20 C. F. R. Pt. 404, Subpt. P, App. 1, 8.00C (Thomson/West 2008).

Several medical sources noted that Plaintiff had a history of psoriasis and several observed the plaques and/or lesions (Tr. 132, 182, 183, 193, 196, 198, 199, 203, 221, 224, 228, 244, 250, 260, 270, 271). There is medical evidence that the flare-ups and/or observed plaques or lesions appeared only once in 2001 (Tr. 233), twice in 2002 (Tr. 132, 228), three times in 2003 (Tr. 183, 193, 196, 198, 199, 203, 221, 224), once in 2004 (Tr. 240) and twice in 2005 (Tr. 270, 271). The documented evidence demonstrated that Plaintiff had a flare up on May 31, 2001, followed by her next flare up on October 16, 2002. Plaintiff's next flare ups occurred on January 16, 2003, November 30, 2004, August 12 and September 14, 2005. This evidence suggests that the ulcerating skin lesions did not persist for three months. The evidence further suggests that there were significant periods of remission or the flare-ups were controlled

15

with treatment. However, there is no documentation of that treatment, its effect on Plaintiff, any functional limitations that resulted or any effects of the treatment. There is a lack of substantial evidence from which the ALJ could designate Plaintiff's psoriasis as a severe impairment.

4.      The ALJ failed to consider her impairments in combination with her back and knee pain.

Plaintiff suggests that the combined effect of her impairments which include obesity and osteoarthritis are the medical equivalence of an impairment.

An impairment or combination of impairments is considered medically equivalent to a listed impairment provided the symptoms, signs and laboratory findings as shown in medical evidence are at least equal in severity and duration to the listed impairments. *Ridge v. Barnhart*, 232 F. Supp. 2d 775, 788 (N. D. Ohio 2002) (*citing Land v. Secretary of Health and Human Services,* 814 F.2d 241, 245 (6th Cir. 1986)(per curiam)). To show that an unlisted impairment or combination of impairments is medically equivalent to a listed impairment, the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* (*citing Sullivan v. Zebley*, 110 S.Ct. 885, 891 (1990)). Because there is no listing for obesity, a finding that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. TITLES II AND XVI: EVALUATION OF OBESITY, SSR 02-1p, 2000 WL 628049 * 5 (September 12, 2002).

In this case, several physicians have noted that Plaintiff had symptoms of osteoarthritis. However, there is a lack of medical findings from which the ALJ could equate the severity of Plaintiff's osteoarthritis to *all* the criteria for the one most similar listed in the muscoloskeletal system impairment categories. Since Plaintiff's "other" impairment does not meet the requirements of a listing, the medical equivalence argument also lacks merit.

17

## **CONCLUSION**

For the foregoing reasons, the Magistrate recommends that the Commissioner's decision be affirmed and the referral to the Magistrate terminated.

                                                /s/Vernelis K. Armstrong
                                                United States Magistrate Judge

Dated: May 15, 2008

## **NOTICE**

Please take notice that as of this date the Magistrate's Report and Recommendation attached hereto has been filed.

Please be advised that, pursuant to Rule 72.3(b) of the Local Rules for this district, the parties have ten (10) days after being served in which to file objections to said Report and Recommendation. A party desiring to respond to an objection must do so within ten (10) days after the objection has been served.

Please be further advised that the Sixth Circuit Court of Appeals, in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) held that failure to file a timely objection to a Magistrate's Report and Recommendation foreclosed appeal to the Court of Appeals. In *Thomas v. Arn*, 106 S.Ct. 466 (1985), the Supreme Court upheld that authority of the Court of Appeals to condition the right of appeal on the filing of timely objections to a Report and Recommendation.