IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Susan Kosakowski,                                                 Case No. 3:07CV2446

       Plaintiff,

      v.                                                       ORDER

Commissioner of Social Security,

       Defendant.

In this appeal, I review defendant Commissioner of Social Security's [Commissioner] final decision denying plaintiff Susan Kosakowski's claim for disability insurance benefits and supplemental security income under the Social Security Act, 42 U.S.C. § 405(g).

Kosakowski objects to the Magistrate Judge's Report and Recommendation [Magistrate's Report] and requests that I reverse the Commissioner's decision. [Doc. 21]. For the following reasons I adopt the conclusions of the Magistrate's Report and affirm the Commissioner's decision.

**Factual Background**

Because the Magistrate's Report has laid out the facts supporting Kosakowski's applications to the Social Security Administration, I only briefly describe the information here. Kosakowski claimed that she had been unable to work since February 1, 2001. She was seen by Dr. Darice L. Zabak in 2001. He found that she suffered from severe depression, that she could not tolerate stress and had memory problems. In 2002, he treated her for an infected lip laceration, leg edema, allergic rhinitis and psoriasis. Dr. Zabak diagnosed Kosakowski with lumbar strain, morbid obesity, depression and arthritis.

1

Dr. Jerome Zake, Ph.D. conducted a disability assessment on October 22, 2002. He made the following conclusions: 1) Plaintiff's ability to relate to others was somewhat impaired; 2) Plaintiff appeared to be capable of maintaining her attention to simple, repetitive tasks; 3) Plaintiff's ability to withstand the stress and pressures associated with day to day work activities was very poor; and 4) Plaintiff appeared capable of managing her own funds. Dr. Zake diagnosed Plaintiff with major depressive disorder, panic disorder and morbid obesity. He also found that she had "severe social impairments in areas such as school, work, family, relations, judgment, thinking or mood."(R.130-131).

In addition to her other impairments, Dr. G.T. Matanguihan conducted a "general survey" in November of 2002 and determined that she had no physical ailments except for morbid obesity. Another doctor found evidence of mild fibrosis in the lower lung field and degenerative changes in the left knee. By December, Plaintiff acquired mild obstructive airway disease and mental problems associated with depressive disorder.

In 2003, Plaintiff was treated for back pain and it was noted that she had some degeneration of the spine. Further, she had lumbago, psoriasis, essential hypertension, depression, cardiomegaly, liver disorder, morbid obesity, tobacco use disorder, family history of malignant neoplasm of gastrointestinal tract and joint pain in the lower leg. As a result, Dr. Zabak opined that Plaintiff could stand/walk for fifteen minutes in an eight hour workday but she could not bend or engage in repetitive foot movements. Dr. Zabak evaluated the Plaintiff's health as poor but stable.

Dr. Elin Cusack Frair conducted a physical residual functional capacity assessment finding that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk at least two hours in an eight-hour workday, sit about six hours in an eight

hour workday and occasionally push and pull using the lower extremities. Plaintiff had no tolerance for fumes, odors, dusts and gases.

By 2004 and 2005, Plaintiff developed advanced degenerative arthritis bilaterally along with severe osteoarthritis with almost complete loss of joint space. Dr. Joseph Peyton suggested that Plaintiff could lift up to ten pounds occasionally, stand for two hours in an eight-hour workday, sit for two hours in an eight-hour workday and sit for up to thirty minutes without interruption. Plaintiff could not climb, crouch, kneel, or crawl. She could not deal with stress, maintain attention or concentration or carry out detailed job instructions.

The Vocational expert consulted by the Commissioner testified that Plaintiff would only be able to perform light or sedentary work. These jobs included: mail clerk, food preparer, ticket taker, fast food worker and laundry folder.

**Procedural Background**

Ms. Kosakowski filed an application for disability insurance benefits (DIB) and supplemental security income (SSI) on September 7 and September 11, 2002. The Social Security Administration denied her initial request for reconsideration. At the administrative hearing conducted on Feburary 9, 2005, by Administrative Law Judge (ALJ) McGrath, Kosawkowski, represented by counsel, and Vocational Expert (VE) Joseph Thompson appeared and testified. On October 31, 2005, the ALJ denied Plaintiff payments under DIB and SSI.

On June 14, 2007, the Social security Administration Office of Hearing and Appeals [The Appeals Council] denied Ms. Kosakowski's request for review and the ALJ's decision became the final decision of the Commissioner on June 14, 2007.

Plaintiff then sought judicial review of the Commissioner's decision, leading to Magistrate Judge Venelis K. Armstrong's May 15, 2008 Report and Recommendation affirming the Commissioner's decision.

## Standard of Review

When reviewing a Magistrate's report, I must make a de novo determination of the portions to which the parties' object. 28 U.S.C. § 636(b)(1).[1]

In reviewing the Commissioner's decision, I must determine whether substantial evidence in the record supports the findings, and whether the ALJ applied the proper legal standards in reaching his or her decision. 42 U.S.C. § 405(g); *Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 691 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). I "may not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Circ. 1994) (citing Richardson, supra, 402 U.S. at 401); *see also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)(citing *Myers v. Richardson*, 471 F.2d 1265 (6th Cir. 1972)). If substantial evidence supports it, I must affirm the ALJ's decision, even if I would have decided the matter differently. 42 U.S.C. § 405(g) (1998); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brainard*, *supra*, 889 F.2d at 681 (citing *Consolidated Edison Co. v. NLRB*, 305 U.S.197, 229 (1938)). In determining whether substantial evidence in support exists, I will view the record as a

---

[1] It is essential to note, however, that I am not limited to reviewing those portions of the Magistrate's Report to which one or more of the parties object. "[L]ack of objections to a magistrate's report and recommendation does not eliminate the district court's obligation to determine whether to accept the recommendation." 91 C.J.S. *U.S. Magistrates* § 9 (2008).

whole, *Allen v. Califano*, 613 F.2d 139, 145 (6th Circ. 1980), and consider anything in the record suggesting otherwise. *See Beavers v. Sec'y of Health, Educ. and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978).

## Discussion

Ms. Kosakowski makes three objections to the Magistrate's Report and Recommendation: 1) that the ALJ failed to provide adequate justification for his rejection of key evidence from two of Kosakowski's physicians; 2) that the ALJ made an error when he incorrectly found that Ms. Kosakowski could return to her "past relevant work" as a cashier or perform other light work; and 3) that the ALJ erred in not designating Ms. Kosakowski's psoriasis as severe.

### 1. The ALJ's Rejection of Evidence

Kosakwoski argues that the ALJ failed to properly weigh the opinion of Joseph Peyton, D.O.[2], and Darice L. Zabak, M.D.[3], her treating physicians.

In assessing the medical evidence present in a claim's support, the ALJ must follow certain governing standards. The ALJ must give greater deference to the opinions of treating physicians. Soc. Sec. Rul. 96-2p, 1996 WL 374188; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The ALJ must accord the treating physician's opinion, as to the nature and severity of a claimant's conditions, controlling weight if it is based on "medically acceptable clinical and

---

[2] Dr. Peyton opined that Plaintiff could lift up to 10 pounds occassionally and less than five pounds frequently; stand for two hours in an 8-hour workday and for only 5-10 minutes at a time; and sit fo rfour hours for only 20-30 minutes at a time. *See* Pl.'s Br. At 12 *citing* (R. at 244) (Exhibit 11F). Plaintiff notes that Dr. Peyton also opined that Plaintiff would need to elevate her feet three time a day for one hour each time. (*Id*.).

[3] Dr. Zabak opined that she could not life more than five pounds, be on her feet for more than 15 minutes, or sit for more than four hours. (R. At 220). Plaintiff notes that Dr. Zabak's opinion indicated that Plaintiff would need to change positions every hours. *See* Pl.'s Br. At 12 *citing* (R. at 220).

5

laboratory diagnositc techniques and is not inconsistent with other substantial evidence in [the]case record." *Wilson*, *supra*, 378 F.3d at 544.

Because treating physician's are "likely to be the medical professional most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, federal regulations explain that the Administration "give more weight to opinion's from [claimant's] treating sources." 20 C.F.R. § 416.927(d)(2); *see also Rogers v. Comm'r of Soc. Sec.*,486 F.3d 234, 242 (6th Cir. 2007) (quoting 20 C.F.R. § 416.927(d)(2)). Therefore, "if the opinion of the treating physician as to the nature and severity of a claimant's conditions is 'well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record,' then it will be accorded controlling weight." Rogers, supra, 486 F.3d at 242 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

This deference, however, does not mean that the treating physician's opinion is irrebutable. According to the regulations, such an opinion is controlling when it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 416.27(d)(2).

In his decision, the ALJ states, "[o]pinions of qualified medical sources have been taken into consideration including those found at exhibits 1F, 5F, 6F, 8F[4], & 11F[5]," (R. at 20). However, the ALJ declined to accept the opinions of Drs. Peyton and Zabak because the assessment of the

---

[4] Exhibit 8F is the medical opinion completed by Dr. Zabak (R. at 220).

[5] Exhibit 11F is the medical assessment completed by Dr. Peyton (R. at 3, 244).

6

claimant's treating physicians conflict with those of the state agency non-examining medical consultants. *See* 20 C.F.R. § 404.1527(d)(4). ("Generally, the more consistent an opinion is with the record as a whole, the more wight we will give that opinion"). Specifically, the ALJ notes that the "assessments by the state agency medical consultants Catherine A. Flynn, Ph.D., Ellen Cusack Friar, M.D. and Thomas T. Vogel, M.D., indicate that the Kosakowski remains capable of meeting the mental and physical demands of a range of low stress, sedentary to light work." (R. at 20).

Since the clinical and laboratory diagnostics conflicted with Drs. Peyton and Zabak's opinions, the ALJ had to refrain from giving the treating source's opinion controlling weight. Dr. Frair reviewed the evidence of record and opined that Kosakowski could occasionally lift and/or carry twenty pounds and ten pounds frequently; stand and/or walk at least two hours in an eight hour workday; sit about six hours in an eight hour workday; and could occasionally use her lower extremities for pushing or pulling. Further, Dr. Flynn noted that Plaintiff retained the ability to meet the mental demands of low stress work and that Plaintiff's alcohol consumption affected her functioning. The ALJ found their opinions persuasive because they were based on the medical evidence of record. *See* 20 C.F.R. 404.1527(d)(3). Considering the clinical medical findings, objective medical evidence, and opinion[s] of the State Agency physicians, the ALJ determined that the judgments of the state agency consultants afforded more weight.

The ALJ provided several reasons for his decision to give controlling weight to only some portions of Drs. Peyton and Zabak's opinions. In his decision, the ALJ mentioned Drs. Peyton and Zabak's lack of objective medical evidence or clinical findings to support their opinions.

Therefore, I find that the ALJ applied the proper legal standards in reaching his decision and that substantial evidence in the record support his findings.

## 2. ALJ's Failure to Support His Finding that Kosakowski is Capable of Performing Light Work

Kosakowski also challenges the Magistrate's conclusion that the ALJ's alternative finding at step five of the sequential evaluation is correct.

The Magistrate opined that the ALJ may have erred at step four of the sequential evaluation since Kosakowski last performed past relevant work over fifteen years ago. The definition of "past relevant work" is work that the claimant has done within the past fifteen years that is substantial gainful activity and lasts long enough for the claimant to learn to do it. *See* 20 C.F.R. § 404.1572 (Thomson/West 2008). The Magistrate decided to overlook this error because the ALJ made an alternative finding at Step 5 of the sequential evaluation in which Kosakowski could perform light work. According to the Vocational Expert, Kosakowski could work as a mail clerk; food preparer; and ticket taker. At the sedentary level, the VE testified that Kosakowski could perform as an order clerk, telephone quotation clerk; and charge account clerk.

The ALJ's assessment of residual functional capacity is driven by the consideration of all relevant medical and other evidence. It is based upon review of the entire case record including but not limited to observations of lay witnesses of a claimant's symptomatology, a claimaint's own opinion of his or her state of capabilities, and many other factors that help an adjudicator determine the most reasonable findings in light of all of the evidence. *See* 20 C.F.R. § 416.945(a)(3)(Thomson/West 2008). Thus, a medical source's statements about what an individual can still do is opinion evidence that an adjudicator considers together with all other evidence in assessing a claimant's residual functional capacity.

Since the ALJ employed the proper legal standard in assessing residual functional capacity. As a result, Kosakowski is capable of engaging in light work and the Magistrate correctly affirmed

the ALJ's decision.

### 3. ALJ Failed to Designate Kosakowski's Psoriasis as Severe

Kosakowski also challenges the ALJ's conclusion that psoriasis is a disabling skin disease and should be viewed as a severe impairment.

The ALJ considered that Plaintiff had a significant manifestation of psoriasis. The psoriasis did not, however, meet the severity to be disabling. Under § 8.05 of the Listing of diseases (20 C.F.R. Pt. 404, Subpt. P, App.1, psoriasis manifested by extensive fungating or extensive ulcerating skin lesions that persist for at least three month despite treatment can be disabling. Severity is based on the extent of skin lesions, the frequency of flare-ups, how the symptoms limit the claimant and the extent to which treatment is necessary to resolve the disease. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 8.00C (Thomson/West 2008).

Kosakowski had a history of psoriasis with several observed lesions. There is medical evidence that the flare ups observed appeared once in 2001, twice in 2002, three times in 2003, once in 2004, and twice in 2005. The evidence further suggests that the ulcerating skin lesions did not persist for three months.  Kosakowski also had significant periods of remission from the flare-ups with treatment.

Therefore, there is a lack of substantial evidence from which the ALJ could designate Kosakowski's psoriasis as a severe impairment.

### Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT

1. The Report and Recommendation of the United States Magistrate Judge be, and the same

hereby is, affirmed.

The Clerk shall enter judgment accordingly.

So ordered.

S/James G. Carr<br>
James G. Carr<br>
Chief Judge